13-0650, People of the State of Illinois, at the lead by Gary Ganetovec, v. Jalyn Ford-Appellant by Julianne Ginell. May it please the Court, Counsel. Good afternoon. I will be focusing on the first argument section of the briefs, but if there are any questions for the remaining two sections, I'd be happy to answer them. Mr. Ford was convicted of reckless conduct. However, even in a light most favorable to the State, Ford was, at most, negligent, not reckless. As such, Ford argues that his reckless conduct conviction should be reversed. In this case, the officers testified that they were effectuating a buy-bust. However, there was no testimony from any officer that any sort of transaction or buy was observed before they moved in to arrest Ford. Moreover, following the accident and Ford's subsequent arrest, no contraband was found either in his car or on his person. As such, he was never charged with any sort of drug-related crime. Rather, he was only charged with reckless conduct and criminal damage to property, the latter charge he was acquitted of, in connection with this accident. Given the fact that no contraband was recovered, along with the accident and damage to the police van resulting from the way in which the officers executed this arrest, it's reasonable to assume that the testimony of the officers may have been motivated by a need to explain their conduct, especially perhaps to emphasize that Ford was more reckless than the evidence may have shown he actually was. Aren't those issues for the trier effect? Yes, of course, the trier effect is the original decider. However, the reviewing court does have the power to still see whether or not the defendant was found guilty beyond reasonable doubt. There is still that standard of review. I do want to mention, although a lot of this case turns on the actual scene where this took place, and there was a diagram in the record, but just for the sake of clarity, I want to give a few notes about it. This was a U-shaped parking lot, and it was around an apartment building with two driveways, an entrance and an exit, and the width was, according to the testimony, about a car and a half wide. One officer, Officer Gorsuch, who it seemed was the lead in this bypass, Ford was seen pulling into this driveway. Gorsuch followed him, and Ford turned the corner, thus he was behind the building and out of sight of the officer on the street. The second officer was ordered to drive in through the opposite driveway in the police van. Once Gorsuch rounded the corner to the back of the building, he saw Ford's car parked and turned on his MARS lights. Given that this driveway was only a car and a half wide, it's very possible that Ford may have thought maybe the officer needs to get around. The officer, Gorsuch, did testify that Ford pulled away at a very slow rate of speed to round the corner, possibly to clear the driveway so that the officer could get around. When he did turn that corner, he was confronted with the police van driving in that opposite direction. There was not enough room to pass, so Ford veered into the bushes. Again, he may have incorrectly thought that the bushes may have given him a little bit of extra clearance in order to get around this car that he's been confronted with coming directly toward him. So he swerved in order to avoid an accident, as one of the officers observing the scene did testify to that it seemed clear that Ford swerved in order to avoid the accident with the police van. Thus, Ford's actions, basically perhaps based on some of the officer's testimony, may have been driving too fast for these confined conditions. He also may have misjudged that area, thought he could have gotten around when he swerved. This all may have been negligence, but it did not amount to recklessness on his part. So as such, Ford's argument is that he was merely negligent, but his conduct did not rise to the level of recklessness, given that he did swerve to avoid this accident with the police van and as a result, crashed into the bushes in the bumper of the van, thus minimizing the damages. Are there any questions? If not, I can save my remarks. Could a reasonable trier of fact find that he swerved to go around that police, you know, trying to get out of there and evade the police? Well, there was no testimony that the van was marked or had MARS lights on, so it's not necessarily true that he knew that the van was affiliated with the police. Although there were some, they were wearing jackets with a small emblem on the front, Ford did testify that the windows were tinted and he could not see in as well as the van was at a higher level than he was, his car was lower. So, first of all, it's not clear that he knew that the van was affiliated with the police. And also, according to the officer's testimony, Officer Watkins, who was on the street observing, it's all a matter of interpretation. It's very possible that he was just trying to avoid this van, who was coming in his direction as well. I mean, the fact that it's possible that there's an innocent explanation isn't enough to reverse a conviction, is it? No, I think that the state still had the burden to prove that this went above negligence. Just the fact that there was an accident does not mean that there was necessarily reckless behavior here. So, we are not saying that his behavior was not possibly negligent, but that does not rise to the level of recklessness. Are there any further questions? Thank you very much. Mr. Kennedy? Yes, Mr. Clark, counsel. In this case, defendant's point, defendants were trying to avoid a collision. People's point, defendant accelerated in an attempt to drive around the police van with too little room to accomplish this maneuver safely, thereby acting in a conscious disregard and indifference to the consequences. Recklessness is basically defined as acting with a conscious disregard or indifference to a substantial and unjustifiable risk. Now, the evidence that counsel provided here, by and large, came from the testimony of the defendant. Testimony from the state showed that, yes, indeed, this was a guy bus. Yes, indeed, this was a U-shaped driveway. Defendant went to the back out of the sight of the one officer who was driving the SUV. He pulls in the south side of the driveway following the defendant's vehicle. On the other side, Officer Tarby drives the arrest van down the north side. On the street is Officer Watkins by the north side. Basically, as counsel pointed out, Tarby testified that the width of the driveway was about one and a half car width. Tarby testified that he was driving at approximately five miles an hour down the middle of that exit area, that exit lane that came around the building. He saw the defendant's car creep around the apartment complex. Defendant completed the turn, straightened out his vehicle, and at that point was 50 to 60 feet away from the van. At that point, Tarby testified that the defendant accelerated straight toward the van, veered to the north, or was coming up to the right, trying to get around the van, going in the bushes, trying to get around the arrest van. There was no room to do so. Watkins was parked on the street. He testified that he witnessed the accident. He described how the defendant's vehicle accelerated as soon as he turned the corner on the north side of the apartment complex. Officer Watkins described how the defendant's vehicle made a sharp turn to the north and into the bushes in an effort to avoid the arrest van. There was no testimony by any officer here that he just swerved to avoid the arrest van striking him. Their testimony clearly shows that the arrest van was 50 to 60 feet away. If the defendant had just stopped, there would have been no accident. The defendant, in an effort to evade the police, especially since Smarts was behind him with his Mars lights on, accelerated, tried to take and get around the arrest van, couldn't make it. If you look at the defendant's testimony, Tarby also testified that this accident happened about midway down the lane, midway in the apartment complex. Based on the defendant's testimony, Tarby would have had to have hit him right around the corner. Because as soon as he came around the corner, he said, he was on me. The accident didn't happen at the corner, it happened down further, 50 to 60 feet from where he was. That's exactly what Tarby testified to. Physical evidence established and proved corroborates the officer's testimony. Basically, in this case, there is no reasonable doubt that the defendant was proved reckless. He consciously disregarded an unjustifiable and known risk. Based on that, and based on the appropriate standard, the defendant's act of accelerating was reckless, was proved guilty beyond a reasonable doubt, and would have to escort to a firm. If there are any questions, I'd be more than happy to respond. What is your response to the restitution argument? The restitution argument, indeed... Usually you can't get the cost of what it would cost you to prosecute and that kind of stuff. Well, for example, I guess the big example, the reason why they can understand this, you give somebody proceeds, and they use the proceeds to buy drugs. Well, you don't get the proceeds back even though it's marked, unless you do it like this. But if you don't, the proceeds are gone. But you can't have the defendant, because they say that's what the public money is for, that's what they're being used for. In this case, because of the accident, this is not the kind of monetary damage done simply to ferret out crime. This was an accident caused by defendant's reckless conduct, in basically trying to get around the man that caused the accident. So this is not the kind of damage where public monies are intended to be used in order to catch a criminal. This was damage that was done to the car that really didn't need to occur at all. So this was property damage. Property damage. That accompanied the reckless conduct. Correct. And so that is, under the case law, that is... The distinguishing factor. The distinguishing factor is that restitution can be ordered in that situation. Thank you, Your Honor. Thank you, Mr. Berry. And Ms. Johnson, you have a vote. Just a brief note about the physical evidence and Ford's own testimony. Ford... The physical testimony actually contradicted what Tarpey had said. Basically, he said that he was going between 2 and 5 miles an hour. And that when Ford... When Ford came around the corner, both said there was about 50 to 60 feet between them. And they did meet in the middle, according to where the actual accident took place, which we know. But Tarpey argues that Ford accelerated... When you think about 50 to 60 feet, this is only a few car lengths. There wasn't that much time to get a lot of speed going. And it actually shows more that probably Tarpey was going faster than he had testified to. The fact that they met where they did. Also, Tarpey was going the wrong direction in this exit lane for this narrow driveway. So it is possible that when Ford was not expecting him as he turned the corner, he continues to accelerate. He's trying to avoid this thing he didn't expect. Whereas Tarpey knew that Ford was going to be there, Gorsuch told him they were coming in to try to cut him off. And then as far as the restitution argument, there is one case cited in our brief. Velez, which I think is actually pretty similar to this case, he was charged with resisting arrest is one of the charges. And during that arrest, the officer's uniform was ripped. And he saw restitution damages for that, which were denied. In this case, even if it's found that here Ford was trying to resist in some way and trying to evade the police, not our argument, but let's say that he was, that same damage done is still both part of the way that this arrest was done and was still part of this spy bust and the normal operating expenses of the police department. So if a person is out throwing rocks through the windows at the police station, that's the taxpayer's problem? No, that's a different hypothetical in our argument. That is an intentional damage done. In this case, that is not the argument. I mean, in this case, defendants actually found not guilty of criminal damage to property. There was no finding that there was this intentional conduct to damage the property. Well, let's suppose this guy has thrown those rocks, is attempting to throw them over the police station, but he's not as strong as he thinks they are, and the arc's too short and they go through the windows of the police station. So it's just been reckless or taxpayer's problem? Well, in this case, this was a spy bust. Similar to a type of arrest, this was a confrontation between the police officers and the defendant. And in that way, this was part of this monetary cost. I mean, the restitution, as far as the restitution statute goes, one of the ways it's interpreted like this is that there are other avenues to seek some sort of compensatory damages for any sort of damage done. There's a fine that can be levied or there's civil action. So in our argument, yes, I think this was more of a civil type of, there was an accident here. But that's not necessarily covered under the restitution statute. Any other questions? Thank you. Thank you both for your argument today. We'll take this matter under advisement and get back to the written decision again. A short day and we'll now take a short break.